**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **WHOOP, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SHENZHEN WONLEX TECHNOLOGY CO., LTD., ET AL.**<br>**Defendants.** | ) | **Civil Action No. 26-12284-FDS** |

**MEMORANDUM AND ORDER ON PLAINTIFF'S**
**MOTION TO AUTHORIZE ALTERNATIVE SERVICE BY EMAIL**

**SAYLOR, J.**

This is a trade-dress and patent infringement case. Plaintiff Whoop, Inc., a United States company, alleges that defendants Shenzhen Wonlex Technology Co., Ltd.; Shenzhen Iwonlex Technology Co., Ltd.; Shenzhen Yoateo Technology Co., Ltd.; Henan Leihu Trading Co., Ltd.; Xuchang Blue Fruit Trading Co., Ltd.; Shenzhen Ruigebaike Technology Co., Ltd.; Shenzhen Huben Chuanqi Technology Co., Ltd.; Shenzhen Innovation Yibai Technology Co., Ltd.; Shenzhen Youpinchuzhong Technology Co., Ltd.; and Shenzhen Weiyikang Technology Co., Ltd., manufacture and sell health-monitoring devices that infringe on its intellectual-property rights. It seeks monetary and injunctive relief under federal law, Mass. Gen. Laws ch. 93A, and Massachusetts common law.

The issue presently before the Court involves Whoop's emergency motion to serve defendants, all of which are Chinese companies, with alternative process by email before the Court considers Whoop's motion for a preliminary injunction. The United States and China are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial

Documents. *See Status Table*, HCCH (Mar. 21, 2024), https://perma.cc/VZ54-RVY5. The Hague Convention requires process to be served on a foreign defendant through a Central Authority. Hague Convention on Service Abroad of Judicial and Extrajudicial Documents art. 2-6, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163, 165-67. In "case[s] of urgency," however, the Convention allows judges to "order . . . any provisional or protective measures." *Id.* art.15, 658 U.N.T.S. at 173. Invoking this provision, Whoop now seeks authorization, under Fed. R. Civ. P. 4(f)(3), to serve defendants by email so that they have notice and an opportunity to be heard before the Court considers Whoop's motion for a preliminary injunction. For the reasons that follow, Whoop's motion to serve defendants by email under Rule 4(f)(3) will be denied. However, Whoop will be permitted to provide notice to defendants by email in connection with the Court's consideration of its motion for a preliminary injunction under Fed. R. Civ. P. 65(a).

## I. Background

### A. Factual Background

Whoop, Inc., is a U.S.-based technology company that produces the "WHOOP Wearable," a device that "allows consumers to track daily behaviors and metrics like sleep, strain, recovery, and more, to help users optimize their physical and mental performance." (Amended Compl., Dkt. No. 20, ¶¶ 6, 30). It released the first commercial version of the WHOOP Wearable in 2015. (*Id.* ¶ 32). Although the device has since gone through several iterations, all versions have included the same "distinctive, non-functional" trade dress, consisting of "a continuous fabric band that wraps over the device (i.e., a faceless device) with thin metal accents on the sides of the device." (*Id.* ¶ 33). According to the amended complaint, "[a]s a result of long and substantial use, sales, advertising, and third-party recognition," the design of the WHOOP Wearable has become strongly associated with Whoop, Inc. (*Id.* ¶¶ 41, 50). The complaint also alleges that Whoop has design patents granted by USPTO. (*Id.* ¶ 66).

According to the amended complaint, defendants Shenzhen Wonlex Technology Co., Ltd.; Shenzhen Iwonlex Technology Co., Ltd.; and Shenzhen Yoateo Technology Co., Ltd. ("Wonlex defendants") are all corporations headquartered in China that manufacture consumer electronics, including health-monitoring wearable devices that copy Whoop's trade dress. (*Id.* ¶¶ 73, 86). The amended complaint alleges that these three defendants operate collectively as a single business enterprise. *Id.* Defendants Henan Leihu Trading Co., Ltd.; Xuchang Blue Fruit Trading Co., Ltd; Shenzhen Ruigebaike Technology Co., Ltd.; Shenzhen Huben Chuanqi Technology Co., Ltd.; Shenzhen Innovation Yibai Technology Co., Ltd.; Shenzhen Youpinchuzhong Technology Co., Ltd.; and Shenzhen Weiyikang Technology Co., Ltd. ("Storefront defendants") are all corporations headquartered in China that allegedly sell the infringing products manufactured by Wonlex defendants. (*Id.* ¶ 88). Whoop alleges that Storefront defendants are shell companies for the Wonlex defendants. (*Id.* ¶ 69).

In March 2026, Whoop allegedly became aware that Storefront defendants were selling what appeared to be knockoff versions of the WHOOP Wearable on online marketplaces. (*Id.* ¶ 67). In April 2026, Whoop sent letters to Storefront defendants demanding that they cease and desist the sale and manufacture of those knockoff devices, which it alleged infringed on its trade-dress and patent rights. (*Id.* ¶ 70). Plaintiff allegedly identified the Wonlex defendants using listings on Alibaba and sent the three Wonlex defendants separate demand letters on April 22, 2026. (*Id.* ¶¶ 72, 83). Two of the Wonlex defendants, Shenzhen Wonlex Technology Co., Ltd. and Shenzhen Yoateo Technology Co., Ltd., provided identical responses, while the third Wonlex defendant, Shenzhen Iwonlex Technology Co., Ltd., did not respond. (*Id.* ¶ 83). In July 2026, Whoop allegedly discovered additional devices sold by defendants that copied its trade dress and patents. (*Id.* ¶¶ 99-102).

**B. <u>Procedural Background</u>**

Whoop filed this action on May 19, 2026. At the same time, it moved for a preliminary injunction restraining Wonlex defendants from offering, promoting, or selling the allegedly infringing products. (Dkt. No. 8 at 1-2). The Court issued summons as to the Wonlex defendants on May 27, 2026. (Dkt. No. 16).

On June 8, 2026, Whoop moved to authorize alternative service by email while "actively pursuing service of process abroad through China's Ministry of Justice ("MOJ"), in compliance with the Hague Convention." (Dkt. No. 17, at 1). It filed a Request Form for Service Abroad of Judicial or Extrajudicial Documents and the required documentation with the Chinese MOJ. (Memorandum in Support of Motion to Authorize Alternative Service, Dkt. No. 18, at 3). It requested that the Court authorize alternative service under Article 15 of the Hague Convention and Fed. R. Civ. P. 4(f)(3), maintaining that service of process under the Hague Convention will take several months, during which it would suffer irreparable harm from the continued infringement of its trade dress and patents. (*Id.* at 2-3).

On July 31, 2026, Whoop filed an amended complaint that included the Storefront defendants in addition to the Wonlex defendants. (Dkt. No. 20). That same day, it moved for a preliminary injunction restraining the Wonlex defendants and Storefront defendants from offering, promoting, or selling the allegedly infringing products. (Dkt. No. 21 at 1-2). The Court issued summons to Storefront defendants on August 14, 2026. (Dkt. No. 26).

Whoop then filed the present motion on August 19, 2026, seeking leave under Fed. R. Civ. P. 4(f)(3) to serve all defendants using email. (Dkt. No. 27). It filed a Request Form for Service Abroad of Judicial or Extrajudicial Documents and required documentation with the Chinese MOJ. (Memorandum in Support of Emergency Motion to Authorize Alternative Service, Dkt. No. 28, at 5-6). As in its first motion for alternative service, it contended that

"[r]equiring Plaintiff to await completion of Hague service before the Court considers preliminary relief is not required by the Hague Convention and would allow the irreparable harm to continue unabated." (*Id.* at 2).

## II. <u>Legal Standard</u>

Rule 4 sets forth the acceptable methods for service of process. "Unless federal law provides otherwise," a corporation that is to be served "at a place not within any judicial district of the United States" must be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2).

Rule 4(f), in turn, provides that unless federal law requires otherwise, "an individual . . . may be served at a place not within any judicial district of the United States":

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . ; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Rule 65, which governs injunctions and restraining orders, provides: "The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).

## III. <u>Analysis</u>

The United States and the People's Republic of China are both parties to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). *See Status Table*, HCCH (Mar. 21, 2024), https://perma.cc/VZ54-RVY5. The

Supreme Court has recognized that the Hague Convention is "mandatory" in cases where it applies. *See Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 699 (1988).

The Hague Convention requires party states to "designate a Central Authority which will undertake to receive requests for service" from other party states. Hague Convention art. 2, 658 U.N.T.S. at 165. Articles Three to Six specify the procedures by which process may be served through a Central Authority. *Id.* art. 3-6, 658 U.N.T.S. at 167-69. Thus, "service by email on defendants in China violates the Hague Convention," at least as a general matter. *Overnight Blowout LLC v. Shenzhen Kairuijia E-Com. Co.*, 2025 WL 2381588, at *1 (S.D.N.Y. Aug. 13, 2025).

Plaintiff relies on Article 15 of the Hague Convention, which provides: "Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures." Hague Convention, art. 15, 658 U.N.T.S. at 173. Plaintiff contends that Article 15 authorizes service by email as a "provisional or protective measure[]" in a "case of urgency" where it faces irreparable harm from ongoing infringement of its intellectual property. (Memorandum in Support of Emergency Motion to Authorize Alternative Service, Dkt. No. 28, at 7-10). Some courts have agreed with plaintiff. *See, e.g.*, *King Spider LLC v. 884886 CH Store*, 2024 WL 5145837, at *1 (S.D.N.Y. Dec. 17, 2024); *Lonati, S.p.A. v. Soxnet, Inc.*, 2021 WL 9839496 at *3 (C.D. Cal. Sept. 20, 2021).

This Court believes that the better view is that set forth in *Overnight Blowout*, 2025 WL 2381588. There, the court held that "alternative service by email under Rule 4(f)(3) is not a 'provisional or protective measure,'" distinguishing service from notice on the grounds that service constitutes a judicial assertion of personal jurisdiction that authorizes final judgments. *Id.* at *2; *see Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Article 15

explicitly provides that "judgment shall not be given" if a defendant does not appear unless the defendant has been served by an approved method at least six months ago and "every reasonable effort has been made" to obtain a certificate of service. Hague Convention, art. 15, 658 U.N.T.S at 171-73. Because proper service authorizes default judgments, allowing service by email in a "case of urgency" would thus "subvert[] the Convention and its overarching purpose of specifying certain approved methods of service and preempting others." *Overnight Blowout*, 2025 WL 2381588, at *2. The court therefore concluded that the "provisional or protective measures" language of Article 15 "is better read to authorize relief such as temporary restraining orders or preliminary injunctions," which, "[u]nlike alternative service, . . . are designed precisely for the purpose of providing interim relief." *Id.* at *3.[1]

Nonetheless, because "preliminary injunctions require only 'notice'" under Fed. R. Civ. P. 65(a), plaintiff "may still be able to restrain defendants . . . by providing notice in a manner that requires substantially less than what service under the Convention requires," including by email. *Id.* And if the court issues a preliminary injunction, "the 'urgency' Plaintiff[] cite[s] as the reason for authorizing alternative service dissipates, at least in large part." *Id.* Under Article 15 of the Hague Convention and Rule 65(a), Whoop therefore can provide email notice to defendants to promote prompt resolution of its motion for a preliminary injunction.

The only remaining question is whether notice by email comports with due process. Due process requires notice to be "reasonably calculated, under all the circumstances, to apprise

[1] Plaintiff cites the advisory committee's notes to the 1993 amendments to Rule 4, which it contends support its interpretation of Article 15. *See* Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment ("Paragraph (3) authorizes the court to approve other methods of service not prohibited by international agreements. The Hague Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances."). But while the advisory committee notes may "'provide a reliable source of insight into the meaning of a rule,' that does not mean they provide a reliable source of insight into the meaning of international law." *Overnight Blowout*, 2025 WL 2381588 (quoting *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002)).

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Service at the email addresses plaintiff has identified meets that requirement. They are listed on defendants' websites as the way interested parties should contact them—the same sites through which defendants offer the allegedly infringing product for sale. (Amended Compl. ¶ 77; Memorandum in Support of Emergency Motion to Authorize Alternative Service, Dkt. No. 28, at 12). And plaintiff previously sent cease-and-desist letters to those addresses that were not returned as undeliverable, suggesting that they are still active addresses. (Memorandum in Support of Emergency Motion to Authorize Alternative Service, Dkt. No. 28, at 12). Due to the typical length of the process plaintiff has initiated through China's Ministry of Justice, there is no obvious method other than email by which plaintiff may notify defendants in a timely manner before the Court considers plaintiff's request for a preliminary injunction. Under the circumstances, the Court will authorize notice by email of the motion for a preliminary injunction.

## IV. <u>Conclusion</u>

For the foregoing reasons, plaintiff's motion to authorize alternative service of process under Rule 4(f)(3) is DENIED; however, pursuant to Fed. R. Civ. P. 65(a), plaintiff is hereby authorized to provide notice to defendants with a copy of the complaint, summons, its motion for a preliminary injunction and the supporting documents, and a copy of this order at

info[at]iwonlex.net; support[at]iwonlex.net; service[at]vwar.fit; vwar[at]outlook.com; sonapang[at]rogbid.com; after-sales[at]rogbid.com; cooperation[at]rogbid.com; hello[at]fitaos.com; service[at]deoum.com; and service[at]bearscome.com, along with a

translation of each of the same into Chinese. The Court will address plaintiff's motion for a preliminary injunction once proof of such notice has been provided in writing on the docket.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: September 18, 2026